## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HERMIONE KELLY IVY WINTER,      :
f/k/a David Allen Allemandi,        :
                                        :
         Plaintiff,               :
                                        : CONSOLIDATED
     v.                            : Civ. No. 17-1322-LPS
                                        :
MARC RICHMAN, et al.,             :
                                        :
         Defendants.            :

---

Hermione Kelly Ivy Winter, Sussex Correctional Institution, Georgetown, Delaware. Pro Se Plaintiff.

Kenneth Lee-Kay Wan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Marc Richman, Dana Metzger, Ramon Taylor, and Kelly Embert.

Joseph J. Bellew, Esquire, White & Williams, Wilmington, Delaware. Counsel for Defendants Dr. Munoz, Carla Miller, Dr. Robin O. Timme, Connections Community Support Programs, Inc., Christopher Moen, Jonathan Tan, Frances Marti, Misty May, Traci Coleman, and Dr. Sara Springer.

## MEMORANDUM OPINION

August 16, 2021
Wilmington, Delaware

STARK, U.S. District Judge:

## I.     INTRODUCTION

Plaintiff Hermione Kelly Ivy Winter ("Plaintiff"), an inmate at the Sussex Correctional Institution in Georgetown, Delaware, commenced this action on September 18, 2017.[1]  (D.I. 3)  The Amended Complaint, filed May 13, 2019, is the operative pleading.[2]  (D.I. 53)  Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*.  (D.I. 5)  Before the Court is Plaintiff's motion to stay the proceedings and for discovery; State Defendants' (*i.e.*, Kelly Embert ("Embert"), Dana Metzger ("Metzger"), Marc Richman ("Richman"), and Ramon Taylor ("Taylor")) motion to dismiss based upon failure to exhaust administrative remedies; and Plaintiff's letter/motion of supplement reply.  (D.I. 96, 97, 100)

## II.    BACKGROUND

Plaintiff has filed numerous lawsuits that raise issues relating to her gender and medical and mental health treatment.  After Plaintiff commenced this action on September 18, 2017, she filed a similar action, Civ. No. 17-1432-LPS, on October 12, 2017, and the cases were consolidated.  State Defendants move for dismissal on the grounds that Plaintiff failed to exhaust her administrative remedies prior to commencing this action.  Alternatively, Defendants argue that Plaintiff's claims are barred by collateral estopped.   To support their position, Defendants refer to discovery in yet another action, *Winter v. Simms*, Civ. No. 16-890-LPS, wherein State Defendants provided Plaintiff copies of all grievances she submitted from June 27, 2016 to November 1, 2019.  (D.I. 97-1 at 53; *see*

---

[1] Plaintiff was housed at the James T. Vaughn Correctional Center in Smyrna, Delaware when she filed the Complaint.

[2] Plaintiff commenced this action as a *pro se* litigant and she received counsel on July 12, 2018.  (D.I. 44)  Counsel drafted the Amended Complaint (D.I. 53) and was later granted leave to withdraw (D.I. 87).  Plaintiff again proceeds *pro se*.

1

*also* Civ. No. 16-890-LPS D.I. 107, 108)  Plaintiff opposes the motion to dismiss and has filed a one-page affidavit that states she has "exhausted all [her] relevant available remedies for this case and all cases mailed up to the recent one on 2/22/2021, and filed, to the best of [her] knowledge and understanding, based as a prisoner under the complete control and abuse of DDOC."  (D.I. 98 at 19)

III.   **LEGAL STANDARDS**

    A.   **Rule 12(b)(6)**

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).  Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014).  A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550

2

U.S. at 555).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

The Federal Rules of Civil Procedure provide that when a motion to dismiss is filed pursuant to Rule 12(b)(6) and matters outside the pleadings are presented to and not excluded by the Court, the matter shall be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12(d).  Plaintiff filed an affidavit outside the pleadings in her opposition to the motion to dismiss.  This matter is not treated as one for summary judgment and, therefore, the affidavit is not considered.

### B.    Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general

3

circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The PLRA requires "proper exhaustion," meaning exhaustion of those administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Because an inmate's failure to exhaust under the PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in her complaint. *See Jones v. Bock*, 549 U.S. 199 (2007); *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019). "Failure to exhaust is . . . is not a pleading requirement for the prisoner-plaintiff.". *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). Failure to exhaust administrative remedies must be pled and proved by the defendant. *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Exhaustion applies only when administrative remedies are "available." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850 (2016). Administrative remedies are not available when the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (internal citation omitted). "When an administrative process is susceptible [to] multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859).

> [W]hen a prisoner does not exhaust his administrative remedies, his "complaint should be dismissed without prejudice to its reinstatement [after exhaustion]." *Ghana v. Holland*, 226 F.3d 175,

4

> 184 n.4 (3d Cir. 2000) (alteration in original).  Thus, under the statute
> and case law, a prisoner typically must exhaust his administrative
> remedies before he presents his complaint to a federal court.  When a
> court determines that the prisoner has not exhausted his remedies, it
> should dismiss the complaint without prejudice to enable the
> prisoner to cure this procedural deficit.

*Korb v. Haystings*, 2021 WL 2328220, at *2 (3d Cir. June 8, 2021).

Where a prisoner shows she has exhausted administrative remedies before a motion

to dismiss is filed, dismissal is improper.  *See id.* at *3.  "[A] district court may view *pro se*

filings informing the court that the prisoner completed the grievance process as supplements

to the complaint," which may be found to show exhaustion after filing the complaint, which

may comply with the PLRA.  *Id.* at *3 and n.4.

## IV.    GRIEVANCE POLICIES

### A.    Regular Grievances

Inmate Grievance Policy No. 4.4 ("Policy No. 4.4") "covers all BOP employees, . . . persons

or organizations conducting business with the BOP, as well as all inmates under BOP supervision or

custody."  (D.I. 97-1 at 66 ¶ III)  Grievances are defined as "a written complaint concerning the

substance or application of a policy or practice, any act or omission attributable to staff . . . affecting

an inmate and any condition or incident within the institution that affects the grievant."  (*Id.* at 67

¶ V)  Under the policy, "grievants . . . in the grievance process who experienced reprisals[³] and who

wish to have them addressed must write directly to the facility warden.  Reprisal letters must

describe in detail the alleged retaliatory actions, identify the names and roles of all staff . . . , specify

the location(s), date(s) and approximate time(s) of alleged retaliatory acts."  (*Id.* at 68 ¶ VI.7)  Policy

---

³ Reprisals are defined as "[a]ny retaliatory action or threat of retaliatory action against inmates or
staff based upon the use of, or participation in, the grievance process."  (D.I. 97-1 at 67 ¶ V)

No. 4.4 provides that "[g]rievances can be returned unprocessed if they . . . were filed after the expiration of the applicable filing time period" or "are merely requests for information or services that may be obtained by other means." (*Id.* at 69 ¶ VI.13)  Inmates are prohibited from submitting more than one grievance arising from the same incident and should only submit one issue per grievance form. (*Id.* at ¶¶ V.I.12, 13)

The non-emergency grievance resolution process consists of three steps. (*Id.* at 70 ¶ VII) Step one provides for informal resolution. At step two, the resident grievance committee/subject matter expert panel makes a recommendation to the warden, who then makes a decision based upon the recommendation, which may be appealed. Upon appeal, at step three, the bureau grievance officer makes a recommendation to the bureau chief, who accepts or rejects a recommendation. The bureau chief's decision is final.

An emergency grievance concerns matters which, under regular policy limits, would subject the inmate to a substantial risk of personal, physical, or psychological harm. (*Id.* at 66 ¶ V) Emergency grievances are forwarded to the facility warden or bureau level subject matter expert, who determines if the grievance qualifies as an emergency. (*Id.* at 73 ¶ VIII)  If the grievance qualifies as an emergency, it is immediately addressed. (*Id.*)  If not, it is returned for regular grievance processing. (*Id.*)  If the grievant rejects the decision and responsive action, the grievant must submitted a written appeal within 24 hours from receipt of the decision, which is forwarded to the bureau chief, who makes a decision on the emergency grievance appeal within 72 hours. (*Id.*)

B.    **Medical Grievances**

The Grievance Process for Healthcare Complaints, Policy No. A-11 ("Policy No. A-11"), applies to "[a]ll Delaware Department of Correction employees and vendor staff, offenders, and any outside healthcare provider serving DOC offenders." (*Id.* at 77 ¶ III)  The grievance process for

6

healthcare complaints consists of three steps.  (*Id.* at 77-80 ¶ VI)  Step one provides for informal resolution.  At step two, if the offender rejects the informal resolution, a hearing is held with the medical grievance committee, who makes a recommendation.  At step three, the offender may appeal the step two recommendation to the Bureau Grievance Officer, who then submits a recommendation to the Bureau Chief or designee, who reviews the recommendation and renders a final decision.

Emergency medical grievances are forwarded to the warden or a designee for review, who may forward the grievance to the highest ranking licensed medical provider at the facility, who determines if the grievance qualifies as a medical emergency.  (*See id.* at 80 ¶ VI.H.1)  If the grievance qualifies as an emergency, the highest ranking licensed medical provider shall provide a solution and respond within 24 hours of receipt.  (*Id.*)  If the offender rejects the decision, the offender must submit a written appeal within 24 hours from receipt of the decision, which is forwarded to the bureau chief, who makes a decision on the emergency grievance appeal by the next business day after receipt of the appeal.  (*See id.* at 80-81 ¶ VI.H. 3, 4)  If it is determined that the grievance does not qualify as an emergency, it is returned for regular grievance processing.  (*See id.* at 81 ¶ VI.H.5)

## V.     DISCUSSION

### A.     Grievances

The Amended Complaint in the consolidated action contains the following counts:[4]  Count I, an Eighth Amendment claim against all Defendants[5] for denial of hormone replacement therapy;

---

[4] The Court dismissed Counts II and VII of the Amended Complaint on November 25, 2020.  (*See* D.I. 87)

[5] All proceedings against Connections Community Support Programs, Inc. and its employees are stayed pursuant to Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a).

Count III, a First Amendment claim against Defendants Dr. Robin O. Timme ("Dr. Timme"), Dr. Cratisssa Hammond ("Dr. Hammond"),[6] Marc Richman ("Richman"), Raymon Taylor ("Taylor"), and David Yunis ("Yunis")[7] for denial of hormone therapy in retaliation against Plaintiff for filing grievances and court claims; Count IV, an Article 1, §§ 9 and 16 of the Delaware Constitution claim against Timme, Hammond, Richman, Taylor, and Yunis for denial of hormone therapy in retaliation against Plaintiff for filing grievances and court claims; Count V, a Fourteenth Amendment Equal Protection claim against all Defendants for differential treatment of Plaintiff on account of her transgender status; and Count VI, an Eighth Amendment claim against Metzger, Peter Osinubi ("Osinubi"), Dr. Richardson, Yunis, Hammond, Taylor, and Embert for failure to protect Plaintiff.

As alleged, on March 3, 2017, Plaintiff "wrote" or "grieved" to Warden Pierce, to whom she summarized her situation; on March 17, 2017, Plaintiff wrote to Sgt. Cain; and on June 1, 2017, Plaintiff complained to Warden Metzger, was told her situation was ungrievable, and was redirected to the medical provider, Connections, with the indication that "they were separate decision-makers." (D.I. 53 at ¶ 63)  Plaintiff wrote to Warden Pierce again on July 30, 2017 and then had a face-to-face conversation with him about her current medical and housing situation.  (*Id.*)

As an initial matter, the Court observes that while Defendants point to specific grievances and their outcomes to support dismissal, Plaintiff submitted an affidavit generally stating she has exhausted administrative remedies for this case and all cases.  As previously discussed, the affidavit is not considered.  Defendants argue that because Plaintiff did not name specific defendants in her grievances, those grievances cannot be used as a basis for exhaustion.  (D.I. 97 at 10, 11)  However,

---

[6] Dr. Hammond has not been served.

[7] Yunis has not been served.

8

the Supreme Court has stated that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances. We leave it to the court below in the first instance to determine the sufficiency of the exhaustion in these cases." *Jones*, 549 U.S. at 220. With the exception of grievances related to retaliation, Policy No. 4.4 and Policy No. A-11 do not require inmates to name individuals in their grievances. Therefore, Plaintiff's failure to name specific individuals is not dispositive of whether she did, or did not, exhaust her administrative remedies.

Defendants also argue that, because they are not medical providers, only regular grievances and not medical grievances can serve as a basis for exhaustion. (*Id.* at 10, 11) The Court disagrees with Defendants' interpretation of DOC policies. Policy No. 4.4 and Policy No. A-11 state that they cover all BOP employees, and DOC employees, respectively. The policies make no distinction between medical and non-medical individuals.

Defendants also refer to numerous grievances submitted and withdrawn by Plaintiff and contend that, because they were withdrawn, the grievances cannot be considered as a basis for exhaustion of administrative remedies. (*Id.* at 11) Defendants cite to two pages of the voluminous record to support this proposition. (*Id.* at 11 ns. 23, 24) Defendants, however, failed to provide the Court with citations to the 21 grievances withdrawn by Plaintiff. (*Id.* at 11) "[T]he court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011). Given the dearth of citations to the record, the Court will not consider this argument.

Defendants combine Counts I, III, IV, and V as "HRT and other gender dysphoria-related claims." (D.I. 97) They argue that Plaintiff failed to exhaust her administrative remedies regarding this category of claims as well as her claim regarding female clothing. (D.I. 97 at 11) They seek

dismissal of Count VI on the grounds that Plaintiff did not file any grievances regarding that claim before filing her complaint on September 18, 2017. (*Id.* at 12)

The Court now turns to the specific grievances discussed by Defendants. The issues raised and whether Plaintiff fully exhausted her administrative remedies are discussed below.

### 1. Count I: Denial of Hormone Replacement Therapy Under the Eighth Amendment

Count I alleges that Defendants failed to follow DOC policy regarding the documentation, diagnosis, and treatment of gender dysphoria, ignored Plaintiff's requests, and denied Plaintiff hormonal therapy treatment. (D.I. 53 at 24) The record contains the following with respect to grievances relating to count I:

> Medical Grievance No. 3953998, submitted December 19, 2016, seeking an outside gender identity specialist and/or hair removal, estrogen pills, testosterone blocker pills, castration, and surgery was withdrawn on January 18, 2017. (Civ. No. 16-890-LPS at D.I. 107 at 198, 199)
>
> Medical Grievance Nos. 359483 and 359486, both submitted March 5, 2017, seeking medical and mental health treatment for gender identity disorder (dysphoria) were returned unprocessed on March 24, 2017 as duplicate grievances. (D.I. 107-1 at 123, 129)
>
> Medical Grievance No. 366012, submitted May 8 and 10, 2017, seeking Nair and/or laser hair remover and hormone treatment (feminine), and therapy to achieve chemical castration was withdrawn by Plaintiff. (D.I. 107-2 at 3-6)
>
> Regular Grievance No. 366230, submitted May 10, 2017, seeking feminine hormone treatment, hair removal treatment, and female undergarment approval was returned unprocessed as duplicate of Grievance No. 366012. (*Id.* at 15-18)
>
> Medical Grievance No. 371650, submitted June 13, 2017, seeking hair removal and hormone injections, was not administratively exhausted on October 11, 2017. (D.I. 107-2 at 90-99) There is nothing in the record that indicates Plaintiff sought to supplement the complaint or

advise the Court that exhaustion was completed prior to the time
Defendants filed a motion to dismiss.

Plaintiff failed to exhaust her administrative remedies, and therefore, Count I will be

dismissed without prejudice.

### 2.   Count III: Retaliation for Filing Grievances and Court Claims Under the First Amendment

Count III alleges retaliation, including denial of hormone therapy, female clothing, hair

removal treatment, treatment for an injured arm, and actions related to Plaintiff's housing in solitary

confinement for three months.  (D.I. 25 at ¶ 90)  The Amended Complaint refers to a letter Plaintiff

wrote to Warden Pierce on March 3, 2017, but the Court was not provided with the letter for

review.  Other grievances referred to by Defendants include:

> Regular Grievance No. 360932, submitted March 25, 2017, seeking
> clothing and undergarments as Plaintiff is on the gender dysphoria
> and transgender list returned unprocessed on Mach 5, 2017 as not
> grievable because the laundry department had not received
> documentation and/or notification that Plaintiff was on a list as an
> inmate authorized to wear feminine garments.  (D.I. 107-1 at 143-
> 145, 147)  To the extent the grievance addresses retaliatory conduct,
> Plaintiff failed to follow proper grievance procedures when she did
> not identify the names and roles of all staff involved.

> Medical Grievance No. 369814, submitted June 3, 2017, requesting
> Nair while waiting for approval of treatment and complaining of
> denial or delay of treatment.  (D.I. 107-2 at 64)  The grievance was
> exhausted as a medical issue on October 11, 2017, noting that at the
> time there were no medical orders for Nair.  (*Id.* at 65-72)  To the
> extent the grievance addresses retaliatory conduct, Plaintiff failed to
> follow proper grievance procedures when she did not identify the
> names and roles of all staff involved.  In addition, there is nothing in
> the record that indicates Plaintiff sought to supplement the complaint
> or advise the Court that exhaustion was completed prior to the time
> Defendants filed a motion to dismiss.

Plaintiff failed to exhaust her administrative remedies and, therefore, Count III will be

dismissed without prejudice.

11

3.      **Count IV: Retaliation for Filing Grievances and Court Claims Under Article 1, §§ 9 and 16 of the Delaware Constitution**

The retaliation claim under Count IV is similar to the claim raised under Count III, except Count IV is raised under state law.  Therefore, the exhaustion requirement is inapplicable to this claim and it survives.  *See Quinn v. Tritt*, 2021 WL 1621294, at *1 n.2 (M.D. Pa. Feb. 1, 2021), report and recommendation adopted, 2021 WL 1193868 (M.D. Pa. Mar. 30, 2021) (citing *Shaheed-Muhammad v. Dipaolo*, 393 F. Supp. 2d 80, 92 n.5 (D. Mass. 2005), explaining that PLRA, and its exhaustion requirements, does not apply to actions brought under state law).

4.      **Count V: Equal Protection Claim for Differential Treatment of Plaintiff on Account of Her Transgender Status Under the Fourteenth Amendment**

5.      **Count VI: Failure to Protect Plaintiff Under the Eighth Amendment**

The Court will consider Counts V and VI together.  Count V of the Amended Complaint alleges that Plaintiff has been treated differently from similarly situated inmates because she is a transgender woman, including being refused Commissary items classified by the DOC as for use by women.  (D.I. 53 at ¶ 94)  Count VI of the Amended Complaint alleges that Defendants failed to protect Plaintiff by allowing her to be sexually assaulted by other inmates on multiple occasions due to her status as a transgender woman.  (*Id.* at ¶ 97)

Defendants contend that Plaintiff failed to exhaust administrative remedies for Counts V and VI.  The grievances to which Defendants provided a citation do not address either issue.  Due to Defendants' failure to cite to other grievances, the Court cannot say that Plaintiff failed to exhaust.  Defendants fail to point to anything in the record to support their position that Plaintiff failed to file any grievances on the failure to protect issue.  Thus, Defendants have not met their burden to prove that Plaintiff failed to exhaust her administrative remedies as to Counts V and VI.  These claims will not be dismissed.

12

**B.      Collateral Estoppel**

In the alternative, Defendants argue that even if Plaintiff has exhausted the claims she raises, the Court may not consider them because collateral estoppel bars Counts I, III, IV, and V of the Amended Complaint.  (D.I. 97 at 13)  Plaintiff did not address the collateral estoppel argument. Given, Plaintiff's *pro se* status, the Court addresses the issue as to Counts IV and V (having already determined that Plaintiff failed to exhaust administrative remedies for Counts I and III).[8]

Collateral estoppel, also known as issue preclusion, refers to the preclusive effect of a judgment on the merits of an issue that was previously litigated.  *See Fairbank's Capital Corp. v. Milligan*, 234 F. App'x 21 (3d Cir. 2007).  "'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'"  *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (quoting Restatement (Second) of Judgments § 27 (1982)).  There are four requirements for the application of collateral estoppel: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  *Id.* (internal quotation marks and citations omitted).

Defendants argue that Counts IV and V should be dismissed because the Court previously determined that Plaintiff failed to exhaust her administrative remedies regarding those claims in Civ. No. 17-1280-LPS (retaliation and equal protection) and Civ . No. 16-890-LPS (retaliation and equal protection).  As previously discussed, when a prisoner does not exhaust his administrative remedies,

---

[8] State Defendants do not argue that VI is barred by reason of collateral estoppel.

his complaint should be dismissed without prejudice to its reinstatement after exhaustion. *See Korb v. Haystings*, 2021 WL 2328220, at *2. Both cases referred to by Defendants were dismissed without prejudice. *See* Civ. No. 18-890-LPS at D.I. 113 (D. Del. Dec. 16, 2019) (finding Plaintiff did not exhaust administrative remedies and dismissing case without prejudice upon Plaintiff's motion to voluntarily dismiss); Civ. No. 17-1280-LPS at D.I. 149 (D. Del. Nov. 25, 2019) (same). Dismissing the cases without prejudice provided Plaintiff an opportunity to cure his failure to exhaust. Collateral estoppel is inapplicable to Counts IV and V and the Court will not dismiss these claims on the basis of collateral estoppel.

### C.   Motion

Plaintiff's reply to the January 28, 2021 order is actually a combined motion seeking various forms of relief. (D.I. 96) Plaintiff states that she is unable to proceed forward as *pro se* with this case, she has no desire to, she is not equipped to, and she has zero records related to the case. (D.I. 96) Plaintiff states that due to the complexities of the case, she is unable to present written arguments and the case could be quickly resolved orally before judge. Plaintiff seeks a stay of proceeds until the ACLU takes over or new representation can be assigned. (*Id.* at 1) She seeks a one-on-one video conference with the presiding judge. (*Id.* at 2) She also seeks all records in the possession of her prior attorney. (*Id.*) Plaintiff states that the amount of information and complexities and rarity of the case is "way beyond the scope" of even the most experienced *pro se* plaintiff. (*Id.* at 3) She states that the law library at SCI provides no services. (*Id.*) Last, Plaintiff states an amended filing must be done before pursing the exhaustion of administrative remedies argument. (*Id.* at 4) Plaintiff's motion will be denied.

Plaintiff has ably represented herself, Defendants have provided her records in numerous cases that are applicable to this case, and, at this juncture, an attorney is not necessary. There is no

14

need to stay the claims raised against State Defendants.  Nor is a video conference necessary.
Finally, the Court will only consider a motion to amend that has attached to it a proposed third
amended complaint as required by the Local Rules of this Court.

Plaintiff's motion of supplement reply will be denied as unnecessary.  (D.I. 100)  The filing is
a supplemental reply to defendants' motion to dismiss and its contents are considered by the court.

## VI.    CONCLUSION

For the above reasons, the Court will: (1) deny Plaintiff's motion to stay and order records,
motion for correction or record, motion for video conference, and request for counsel (D.I. 96);
(2) deny as unnecessary Plaintiff's motion of supplemental reply (D.I. 100); (3) grant in part and
deny in part Defendants' motion to dismiss (D.I. 97); and (4) dismiss without prejudice Counts I and
III for failure to exhaust administrative remedies.

An appropriate Order will be entered.